IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT VINCENT GRAUE,

               Petitioner,

     v.

JAMIE MILLER,

               Respondent.

Case No. 2:21-cv-01635-MO

OPINION AND ORDER

Nell Brown
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

       Attorney for Petitioner

Lisa Udland, Deputy Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

       Attorneys for Respondent

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his Clackamas County convictions dated April 2, 2013. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

On March 5, 2007, the Clackamas County Grand Jury indicted Petitioner on 12 counts of Sodomy and ten counts of Sexual Abuse in the First Degree for crimes Petitioner had allegedly committed against his stepson, JG, between 2001 and 2004. Respondent's Exhibit 102. At the time of trial, JG was 16 years old and testified to multiple incidents of sexual abuse. Petitioner testified in his own defense and denied the allegations. Although the State and the defense put on numerous other witnesses, aside from JG and Petitioner, there were no other eyewitnesses and there was also no physical evidence of abuse. In this respect, the case came down to a credibility contest between JG and Petitioner.

The jury convicted Petitioner on all counts, and the trial judge sentenced him to 200 months in prison. The Oregon Court of Appeals reversed the convictions and remanded the case for a new trial because the trial had improperly admitted expert testimony from a CARES nurse practitioner who testified to a diagnosis of child sexual abuse in the absence of any supporting physical evidence.[1] *State v. Graue*, 240 Or. App. 460, 245 P.3d 1289 (2011); *see also State v. Southard,* 347 Or. 127, 218 P.3d 104 (2009) (diagnoses of child sexual abuse in the absence of physical evidence is inadmissible under OEC 403).

---

[1] CARES is an acronym that stands for Child Abuse Response and Evaluation Services. Respondent's Exhibit 121, p. 6. n.1.

On remand, Petitioner was initially represented by an attorney who retained Dr. Wendy Bourg as an expert psychologist to support the defense. Initial counsel thereafter withdrew due to health issues, and the trial judge appointed another attorney (hereinafter "counsel" or "defense counsel") to represent Petitioner. On the morning Petitioner's new trial was due to commence, he waived his right to a jury trial and agreed to proceed with a bench trial that involved mostly stipulated facts. Respondent's Exhibit 118, pp. 3-8. Counsel and the prosecutor agreed that, with the exception of JG's younger sister, AG, who had not testified at the original trial, the parties would rely on the trial judge's review of the transcripts from the original trial in lieu of calling the witnesses again at the retrial. The trial judge summed up what had been agreed upon in terms of the mechanics of the trial:

> And what I've been told is that the lawyers, after opening statements, wish to proceed with, essentially a stipulated facts trial, meaning that I would review the transcripts which set forth the testimony in the first trial of the witnesses who would testify in this trial.
>
> And then, after I read that material, we proceed with closing arguments and then I would render a verdict.
>
> Now in addition to reading testimony of the witnesses in the first trial who would testify in this trial, but [I would] also be receiving evidence today from one witness, who did not testify in the first trial.
>
> And then finally, I would review the transcript regarding the receipt of the Children's Center Interview of [JG] and determine whether or not that was admissible, and should be considered in this trial.

*Id* at 32.

Defense counsel did not call Dr. Bourg as a new witness, and limited the trial judge's consideration of the defense's case to five of the 19 witnesses who had testified for the defense

in the original trial. The trial judge received AG's testimony, reviewed the transcript as to the relevant witnesses as identified by defense counsel and the prosecutor, and found Petitioner guilty on all counts based upon JG's and AG's testimony.[2] As he had following the original trial, the judge imposed a prison sentence totaling 200 months.

Petitioner took a direct appeal raising claims that are not germane to this case, and the Oregon Court of Appeals affirmed the trial court's decision without issuing a written opinion. *State v. Graue,* 267 Or. App. 638, 342 P.3d 181 (2014). He did not seek further review in the Oregon Supreme Court.

Petitioner next filed for post-conviction relief ("PCR") in Malheur County where, among his claims, he contended that defense counsel had been ineffective with respect to: (1) his investigation into lay and expert witnesses; and (2) his advice regarding the stipulated facts trial, resulting in a decision that was not knowing, voluntary, and intelligent. The PCR court denied relief on all of his claims. Respondent's Exhibit 171. The Oregon Court of Appeals affirmed the PCR court's decision without issuing a written opinion, and the Oregon Supreme Court denied review. *Graue v. Cain,* 306 Or. App. 562, 471 P.3d 830 (2020), *rev. denied,* 367 Or. 559, 480 P.3d 936 (2021).

On November 9, 2001, Petitioner filed his federal Petition for Writ of Habeas Corpus in which he raises five grounds for relief:

> 1.    Defense counsel was ineffective for failing to prepare, interview, and schedule witnesses for trial;
>
> 2.    Counsel was ineffective when he advised Petitioner to waive his right to a live jury trial. Petitioner's waiver was not willingly, knowingly, or voluntarily made;

---

[2] The trial judge received the CARES interview, but it formed no part of his decision. Respondent's Exhibit 119, p. 17.

3.      Defense counsel, appellate counsel, and PCR counsel were ineffective for failing to protect Petitioner from an illegal sentence;

4.      Defense counsel erred by failing to attempt to recuse the judge who presided over his retrial (who had also presided over his original trial); and

5.      The trial court erred when it introduced a CARES video under OEC 803(4).

Petitioner concedes that he procedurally defaulted Grounds Three, Four, and Five, leaving them ineligible for habeas review. Memo in Support (#42), p. 19. The parties agree that Petitioner properly exhausted the ineffective assistance of counsel claims in Grounds One and Two. Respondent asks the Court to deny relief on Grounds One and Two because the PCR court's decision was not objectively unreasonable.

## DISCUSSION

### I.    Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

**II.    Analysis**

Petitioner asserts that although his defense put on 19 witnesses (including himself) at his initial trial, defense counsel on retrial chose to call only five witnesses.[3] He claims that by doing so, counsel failed to prepare and call witnesses that had already provided favorable testimony. He also contends that counsel failed to consult with Dr. Bourg who had produced a beneficial psychological report that explained why JG posed a high risk for not being truthful. He concludes that based upon these shortcomings, counsel provided him with incomplete or incorrect information such that he did not make a knowing, voluntary, and intelligent decision to enter into a stipulated facts bench trial.

The Court uses the general two-part test established by the Supreme Court to determine whether Petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).

---

[3] Petitioner elected not to testify at his retrial or have the judge consider his original trial testimony. Respondent's Exhibit 171, p. 8.

Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. In the context of a claim that an attorney failed to provide appropriate advice regarding the waiver of a right to trial in favor of a stipulated facts trial, the test for prejudice is whether there is a reasonable probability that, had counsel not erred, Petitioner would have insisted on proceeding to trial. *Freeman v. Franke,* 2014 WL 4808867, *3 (D.Or., September 26, 2014). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland,* 466 U.S. at 693). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

Counsel provided the PCR court with a declaration wherein he stated that he and his investigator had witnesses prepared and ready to testify at trial. Respondent's Exhibit 157, p. 3. With respect to Dr. Bourg in particular, he was of the opinion that her testimony would not have been helpful and might also have opened the door to the prosecution to call their CARES experts, a tradeoff he was unwilling to make. *Id*. The PCR court found defense counsel and his investigator to be credible, found Petitioner not to be credible, and denied relief. Relevant portions of the PCR court's decision follow:

Trial counsel and his investigator . . . were not starting from scratch. The case had already been tried once and they had the benefit of the transcripts of the testimony of witnesses from the first trial. They followed up with those witnesses to update their testimony. They also investigated other potential witnesses that did not testify at the first trial. Other than the testimony of Dr. Bourg, Petitioner has offered no evidence that he claims would have been beneficial to his case that was not offered at the first trial. The fact that trial counsel planned to call fewer witnesses in the second trial was not an indication of lack of preparedness. Counsel had the benefit of reviewing the testimony of the prior witnesses including how they stood up on cross-examination and made a determination to not call all of the witnesses from the first trial in the second trial. Petitioner also decided, after reviewing the prior trial, to not testify in the second trial or even have his prior testimony reviewed in the stipulated facts trial.

Petitioner has not proven that trial counsel was ineffective for failing to confer with and prepare to call someone like Dr. Bourg as a witness. As testified to by Petitioner, he was considering waiving jury trial well in advance of the day of trial. He had indicated that would probably be his approach to his previous attorney [from the retrial]. The final decision was not made until the morning of trial. Petitioner's defense in the second trial, as in the first, was that JG . . . had deliberately lied about the abuse because (1) he had been caught by his mother masturbating to pornography and he needed to get out of trouble, and/or (2) that he wanted to help his mother in the custody dispute between his mother and Petitioner over his stepsister AG. Testimony regarding implanted or false memory would not have been helpful because the defense was not that JG was mistaken by false memory but that JG was intentionally lying. In addition, the facts of the case did not suggest the likelihood of implanted or false memory in a 15-16-year-old child. Expert testimony that some children lie to get out of trouble or to help a parent in a custody dispute was hardly needed, in light of the fact that the case was being tried to an experienced trial judge who had presided over the first trial. Dr. Christopher Johnson testified in the first trial regarding child interview standards and the possibility of children making false claims of sexual abuse. The result was a conviction. Counsel had the benefit of reviewing that testimony, including the prosecutor's cross-examination, to determine the effectiveness of such testimony in Petitioner's case.

Much of Dr. Bourg's report deals with Dr. Bourg['s] commenting on JG's testimony and so called "red flags" and questioning the credibility of JG's reports and testimony. Dr. Bourg did not interview J.G. and has no evidence whatsoever that J.G.'s memory was in any respect altered. That portion of Dr. Bourg's report would not be admissible as evidence at the second trial because it constituted commenting on the credibility of a witness. Petitioner's claim is that he would not have agreed to the trial by transcript if he had seen a report such as Dr. Bourg's. It is not reasonable that he would have done so if he also understood that much of Dr. Bourg's report was not admissible at trial. In addition, whether admissible or not, the very items that Dr. Bour[g] points to in questioning the credibility of JG are the same issues that were extensively litigated in the first trial. Petitioner was well aware of these issues when he decided to waive his right to a normal trial and proceed primarily on the transcripts. Petitioner did not need Dr. Bourg's report to know that there was evidence that JG might have been motivated to lie about the abuse to get out of trouble with his mother and help his mother in her custody battle. He was also aware of improper interviews and implanted or false memory from the prior testimony of Dr. Johnson.

\* \* \*

Contrary to Petitioner's claims, counsel did discuss the pros and cons of the stipulated trial and allowed Petitioner to make the final decision. Petitioner is intelligent and was fully engaged in the progress of and decision making in his case. Among the considerations was the fact that JG was now 21 and presumably more articulate and the argument that he was lying about being abused by Petitioner to get out of trouble or to help his mother in a custody dispute would carry less weight. The essence of the state's case was that J.G. was a credible witness. Trial counsel believed that if the testimony of JG was limited to his testimony in the first trial, there was a chance the judge would not find JG credible and would find that the state had not proven its case beyond a reasonable doubt and acquit Petitioner, especially without the harmful testimony regarding the CARES analysis. Trial counsel also explained to Petitioner that the prosecutor was seeking a longer sentence if he was convicted again and that if there was new evidence produced at a trial with live[] witnesses, the state might be able to convince the judge to impose a longer sentence. In the end, Petitioner made the final decision.

Petitioner admitted during his deposition that he fully understood all the important facets of the choice between a bench trial and a

trial by transcript. That Petitioner understood his options was also illustrated during the discussion he had with the trial judge. The only consideration that Petitioner claims to not have had was Dr. Bourg's report, particularly the part in which she challenges the credibility of JG. That testimony would not have been admissible at trial. Petitioner had already had a full jury trial and knew the probable testimony that could be produced at a full second trial. Petitioner was aware of the issues related to J[G]'s credibility. Petitioner was fully aware of the constitutional rights that he was giving up by his decision to proceed to trial primarily on the transcripts. His waiver and decision were knowing intelligent and voluntary. Petitioner has not proven that Petitioner's decision was based on incorrect advice by his attorney. Petitioner has also failed to prove that his decision was the product of inadequate advice by his attorney.

Respondent's Exhibit 171, pp. 10-11 (internal citations omitted).

On habeas corpus review, the issue is whether the PCR court's decision to deny relief was objectively unreasonable. The decision was not only well-reasoned, but quite thorough. It included a state court interpretation of state law that much of Dr. Bourg's report would not have been admissible at trial. That interpretation that is binding on this Court. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Floyd v. Filson*, 949 F.3d 1128, 1146 (9th Cir. 2020) (even a state court's misreading of state law is not a ground for habeas corpus relief). Where Dr. Bourg's testimony would have been largely inadmissible at trial, Petitioner cannot claim he would have insisted on a live trial had he been apprised of the contents of her report.

In addition, the PCR court made a number of factual findings that undermine Petitioner's claims: (1) as mentioned above, defense counsel and his investigator were credible whereas Petitioner was not; (2) counsel and the investigator not only followed up with the witnesses from the first trial to update their testimony, but also investigated other potential witnesses who had

not appeared at the original trial; (3) defense counsel and his investigator had the benefit of reviewing witness testimony from the first trial, had adequately prepared in this regard, and made an informed decision not to present the testimony of many of those witnesses for consideration during the retrial; (4) counsel's advice to avoid another live trial was based upon his belief that JG's maturity at the time of the retrial would have undercut the defense's theory of the case, and the prosecutor was seeking a lengthier sentence at the retrial so it was important to limit new evidence; and (5) even if Dr. Bourg's testimony were admissible, the topics it covered were largely duplicative of testimony adduced at the first trial through a different expert and did not yield a positive result. These findings, many of which are factual in nature and which Petitioner has not overcome by clear and convincing evidence pursuant to 28 U.S.C. § 2254 (e)(1), show that counsel's performance did not fall below an objective standard of reasonableness. Moreover, Petitioner is unable to establish prejudice. Accordingly, Petitioner has not shown that the PCR court's decision to deny relief on the claims in Grounds One and Two was either contrary to, or an unreasonable application of, clearly established federal law. At a minimum, the PCR court's well-reasoned decision was not so unreasonable that no fairminded jurist could agree with it. *See Richter*, 562 U.S. at 102.

///

///

///

///

///

///

///

11 – OPINION AND ORDER

**CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is denied. The Court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

_____7/28/2023_____
DATE

*Michael W. Mosman*_____
Michael W. Mosman
United States District Judge